# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 11, 2005

## STATE OF TENNESSEE v. JAMES AUSTIN

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-04749     John P. Colton, Jr., Judge**

_____

**No. W2004-00510-CCA-R3-CD  - Filed April 14, 2005**

_____

The defendant appeals his conviction for second degree murder on the grounds of insufficient evidence to support the verdict and the sentence, pursuant to <u>Blakely</u> issues.  After review, we find sufficient evidence to support the verdict.  We conclude that the two enhancement factors used to elevate the sentence are violative of <u>Blakely</u> and, therefore, modify the sentence to twenty years.  The cause is remanded for modification of sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed as Modified**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which J.C. MCLIN, J., joined. DAVID G. HAYES, J., filed a dissenting opinion.

Charles W. Gilchrist, Jr. and Lance Chism, Memphis, Tennessee, for the appellant, James Austin.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William L. Gibbons, District Attorney General; and Karen Cook and Stacy McEndree, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The defendant, James Austin, was indicted along with co-defendants, Carlos Summers and Parnell Austin, for the first degree murder of Dedrick Jennings.  The defendant was tried separately and convicted by a jury of second degree murder, a Class A felony.  The defendant was sentenced as a Range I, standard offender to twenty-two years, to be served 100% as a violent offender.  He appeals his conviction on the grounds of insufficient evidence to support the conviction and the sentence, due to alleged inappropriate application of enhancement factors in light of <u>Blakely</u>.

**Factual Background**

On September 18, 1999, Myka Warmsley hosted a birthday party at her apartment at 1337 Turkey Run in Memphis. The party began early in the day and culminated late in the evening with the shooting death of Dedrick Jennings by the defendant, James Austin.

The State presented five witnesses who were present at the party when the killing took place. Bryant Jennings, a cousin of the victim, had played cards at the party with the victim, Terrence Hill, and the defendant. Jennings and the victim were partners against Hill and the defendant. "Trash talking" ensued between the two teams and escalated between the victim and the defendant to the point of "fighting words" being exchanged. The defendant began insisting that Hill take him home. Eventually, Hill and the defendant left the party. Jennings stated that the defendant returned in the company of his brother, Parnell Austin, and Carlos Summers. Jennings stated that all three men were carrying guns. Jennings started calling out the victim's name to warn him, then ran upstairs to hide. Jennings heard the host repeating the words, "don't do that." After hearing a gunshot, Jennings ran back downstairs. Outside on the patio, he found the victim lying on the ground, bleeding from the mouth. Jennings stated the victim had consumed alcohol and used marijuana at the party. To Jennings' knowledge, the victim was not armed.

Ms. Danielle Branch testified that she arrived at the party between 5:00 and 5:30 p.m. Later in the evening, she saw three men enter the apartment with guns. The party guests started running. The defendant said, "where's that nigger at?" The victim ran from the kitchen and bumped the defendant, who was in the entrance door. She said the victim fell outside and landed on his back. The defendant was over the victim, and she observed the defendant shoot the victim. After the shooting, she saw Carlos Summers kick the victim and spit on him. The defendant and his two companions then left the scene in a gold Cadillac. Branch said she had not seen the victim with a weapon.

Myka Warmsley, the hostess of the party, estimated that between thirty and fifty people attended. She stated that the defendant seemed "kind of upset" when he left the party. Ms. Warmsley was in the kitchen, preparing the victim a plate of food, when the defendant and his companions returned. She saw that the defendant, Carlos Summers, and Parnell Austin each had a gun. She tried to calm Carlos Summers and then intervened when Parnell Austin started upstairs. The defendant had been by the entrance door. Ms. Warmsley heard a gunshot and ran to the door, where she saw a body lying outside. She bolted upstairs, called the police, and looked out the window. She witnessed Carlos Summers hitting and kicking the victim. The defendant and his companions then left the scene in a gold Cadillac.

Ms. Khamesa Jefferson was grilling food on the patio at Ms. Warmsley's apartment when the defendant, his brother, and Carlos Summers came to the party. She said two of the three co-defendants had guns, but she could not recall which individuals were armed. She heard them announce angrily, "where's that nigger at?" and "where's that m-f at?" Ms. Jefferson witnessed the victim run out the door with the defendant running behind him. She heard a shot and then saw the

victim lying on the ground with the defendant standing over him. She also witnessed Carlos Summers pistol whip, stomp, and spit on the reclining victim. The defendant and his companions then left the scene in a gold Cadillac.

Andrea Phipps was eating when the disturbance erupted at Ms. Warmsley's party. She heard someone shout that "he has a gun!" When she turned, she saw a person standing, with a gun in his hand, who asked, "where's that nigger at?" Ms. Phipps ran outside and hid behind a tree. She stated that she heard two gunshots while she was outside. She saw a gold Cadillac pull away and went to the scene where the victim was lying on the ground, struggling to breathe before he died.

Despite an exhaustive search, police officers responding to the crime scene were unable to find a weapon or ammunition casings. Steve Scott, a TBI agent, was qualified as a firearms identification expert. He identified a hole on the left back of the victim's shirt as the entry hole, based on the presence of powder burns. Tests performed by Agent Scott, with a .38 caliber gun, indicated that the gunshot was at close range, in a bracket from four to twenty-four inches away.

Sergeant James Fitzpatrick of the Memphis Police Department, testified to interviewing the defendant on September 19, 1999. The defendant gave two separate and inconsistent statements. In the first interview, the defendant admitted that he was responsible for shooting the victim. The defendant related that the victim began making threats toward him during their card game. The defendant stated that he was armed with a revolver at the time, but left the party. He said he later returned to apologize to the victim. The defendant's brother, Parnell, had also arrived at the party. Guests saw the defendant's gun handle in his pocket and panicked. The victim then tackled the defendant and started struggling to take the defendant's weapon. The defendant said he snatched the weapon and accidentally shot the victim. He stated that he left the gun, a chrome .38 with a brown handle, on the ground at the scene. He then left with his brother.

The defendant's second statement was made approximately an hour later. In the second statement, the defendant said that after leaving the party, he had met with the co-defendants, and the three of them decided to go back and scare the victim. All three co-defendants were armed, and the defendant was displaying his weapon when he entered the apartment. The defendant stated he stepped outside the apartment, and the victim grabbed him and started wrestling, trying to take the weapon. The defendant broke free and shot at the victim. The three co-defendants left and met one "Lorenzo," who was given the defendant's revolver. The defendant stated that the weapon belonged to his father.

Dr. O. C. Smith, the Shelby County Medical Examiner, testified as a forensic pathology expert concerning the autopsy he performed on the victim. The bullet entrance wound was on the left side of the victim's back, and an exit wound was on the left side of the victim's chest. The victim had an abrasion on his left knee, abrasions and lacerations on his face, and a bruise on the left back of his head. Injuries to the victim's face were consistent with being struck by a gun or some other instrument with straight edges. The victim's blood alcohol level was .13, and his urine was

positive for marijuana. Dr. Smith stated that the cause of death was a gunshot wound to the back and the manner of death was by homicide.

The defense presented two witnesses, in addition to the defendant's testimony. Kirestin McIntyre testified that after the defendant and his companions returned to the party with guns, she talked with the defendant and told him to leave. The defendant had a gun in his hand. Ms. McIntyre felt a "bum-rush" at her back and saw the defendant and victim stumble out the door. She saw the defendant reach over and shoot the victim in the back while the defendant was falling backwards. She said the victim was not reaching for the defendant's gun.

Kabious Johnson had gone to the party with the defendant and Terrence Hill. He saw nothing amiss during the card game, but the defendant did insist on leaving. Johnson was outside the apartment when the three co-defendants returned. He heard a commotion inside the apartment, then saw bodies emerge, and recognized the defendant. Two people fell down, and Johnson heard a shot fired. Johnson left the scene immediately. He later found out the victim had died and relayed this information to Parnell Austin.

In his testimony at trial, the defendant said that the victim threatened him during their card game. He said that, after leaving the party, he encountered the two co-defendants and told them of his experience with the victim. The three talked about scaring the victim as they returned to the party, each one armed. The defendant said he called out for the victim and had his .38 revolver in his hand. The defendant said that he was turning to leave when the victim rushed him and that he shot the victim accidentally. The co-defendants left and later learned that the victim had died. The defendant gave his weapon to "Lorenzo" before turning himself over to the police.

### Sufficiency of Evidence

The defendant phrases his first issue in the following manner: "Whether the trial court erred by not granting a motion for judgment of acquittal after the State's proof and at the end of the trial and not overturning verdict as thirteenth juror based on insufficiency of the evidence?"

The standard of review for motions on judgment of acquittal is the same as when analyzing the sufficiency of the convicting evidence. See State v. Blanton, 926 S.W.2d 953, 957-58 (Tenn. Crim. App. 1996). Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996); State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984).

A conviction for second degree murder requires proof that the defendant unlawfully and knowingly killed another. See Tenn. Code Ann. § 39-13-201, -210(a)(1). A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. Tenn. Code Ann. § 39-11-302(b).

The defendant contends that he did not act "knowingly" and that the evidence would only support reckless or negligent homicide. The defendant testified that his shooting of the victim was accidental and due to a struggle with the victim.

The evidence established that the defendant became angry with the victim and left the party after they had a heated verbal encounter. The defendant returned with two companions, all brandishing weapons and calling out for the victim in insulting language. There was no evidence adduced that the victim was armed. There was evidence that the victim attempted to escape. Danielle Branch testified that the victim fell during his escape attempt and that the defendant leaned over and shot the victim. A defense witness, Kirestin McIntyre, observed the defendant reach over and shot the victim. Ms. McIntyre also stated that the victim was not attempting to reach for the defendant's weapon. The defendant's immediate disposal of the murder weapon was not consistent with his claim of an accidental or negligent killing. The jury rejected the defendant's contention that the shooting was accidental and accredited the State's witnesses. This is the jury's prerogative. We conclude that the evidence is sufficient to justify a rational jury to find beyond a reasonable doubt that the defendant knowingly killed the victim.

**Sentencing**

The defendant, in his second issue, challenges the trial court's application of certain enhancement factors in light of Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

The defendant was sentenced as a Range I, standard offender for the conviction of second degree murder, a Class A felony. The trial court applied two enhancement factors: (3) the defendant was a leader in the commission of an offense involving two or more criminal actors, and (11) the defendant had no hesitation about committing a crime when the risk to human life was high. See Tenn. Code Ann. § 40-35-114(3), (11). One mitigating factor was found: that the defendant was eighteen years of age and had no prior record. Based on these factors, the trial court enhanced the sentence from the presumptive twenty-year sentence to twenty-two years. A defendant's sentence is reviewed by the appellate courts de novo with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). For this presumption to apply to the trial court's actions, there must be an affirmative showing in the record that the trial court considered sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). While determining or reviewing a sentence, the courts must consider: (1) the evidence received at trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence offered

by the parties on the enhancement and mitigating factors; (6) any statement the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b); State v. Holland, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993); State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991) .

If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, has given due consideration and proper weight to the factors and sentencing principles, and has made findings of fact adequately supported by the record, this Court may not modify the sentence even if it would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, if the trial court does not comply with statutory sentencing provisions, our review of the sentence is *de novo* with no presumption the trial court's determinations were correct. State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000).

The State contends that the defendant has waived the Blakely issues by failing to properly raise it before the trial court. We reject this contention in conformity with prior decisions of this Court. See State v. Chester Wayne Walters, No. M2003-03019-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 1053, at *55-56 (Tenn. Crim. App., at Nashville, Nov. 30, 2004); State v. Earice Roberts, No. W2003-02668-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 1049, at *29-30 (Tenn. Crim. App., at Jackson, Nov. 23, 2004).

In Blakely, the Supreme Court, applying the rule in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), held that "the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S. Ct. at 2537.

The two enhancement factors utilized in this case were neither reflected in the jury verdict or admitted by the defendant and, therefore, are in violation of Blakely. The range of punishment for a Range I defendant is fifteen to twenty-five years for a Class A felony. Tenn. Code Ann. § 40-35-112(a)(1). The presumptive sentence to be imposed is the midpoint in the range for a Class A felony, twenty years. We conclude that the two enhancement factors were inappropriately applied in light of Blakely and that the one mitigating factor is of such minimal weight that the sentence should be reduced to the presumptive sentence of twenty years.

## Conclusion

Based on the foregoing reasons, we affirm the defendant's conviction for second degree murder but remand for entry of a sentence modification to twenty years.

_____
JOHN EVERETT WILLIAMS, JUDGE